UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PAUL BREWER,** | Civ. No. 2:13-799 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **GARY LANIGAN,** *et al.* | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Paul Brewer brings this action against several state actors that he alleges were responsible for his termination of employment at the Hudson County Juvenile Detention Center ("HCJDC"). Defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff submitted opposition to the motions. The opposition contained no arguments but requested *pro bono* counsel. There was no oral argument. L.Civ.R. 78(b). For the reasons set forth below, Plaintiff's request for *pro bono counsel* is **DENIED**, and Defendants' motions to dismiss are **GRANTED**.

**I.   BACKGROUND**

Plaintiff alleges that the Defendants retaliated against him with workplace harassment and termination of employment for a disagreement over his job title. Plaintiff began employment at HCJDC in 2007 as a Community Youth Worker. (Complaint at ¶ 15) In July 2011[1] Plaintiff completed and submitted an application to the New Jersey Civil Service Commission for a title change. (*Ibid.*) He requested to be classified as a Social Worker "since he was performing the responsibilities of a Social Worker . . . since the date he was hired." (*Ibid.*) In September 2011,[2] the

---

[1] The Complaint states "July 2012," however this date is inconsistent with the rest of the Complaint's narrative. The court assumes Plaintiff meant July 2011.
[2] The Complaint states "September 2012," however this date is inconsistent with the Complaint's narrative. The court assumes Plaintiff meant September 2011.

Civil Service Commission "placed him as a Social Worker" with a salary adjustment. (*Ibid.*) Plaintiff submitted the "decision" of the Civil Service Commission to his supervisor, Caren DeGise, so that she "could initiate the necessary changes in his employment file as well as to inform the administration of the changes." (Complaint at ¶ 16)

On October 25, 2011, Plaintiff attended a Supervisor/Employee Meeting where he learned that the Hudson County Department of Personnel had determined that Plaintiff was not qualified to assume the title and responsibilities of a Social Worker and that he would immediately resume the title of Community Youth Worker. (Complaint at ¶ 17) Plaintiff sought review of the Department of Personnel's decision. (Complaint at ¶ 19-20) On January 6, 2012, Diana Youst, the Administrator of HCJDC, issued a memorandum stating that Plaintiff would immediately resume the title of Social Worker and its responsibilities. (Complaint at ¶ 20)

Plaintiff complains that he was subjected to various forms of hostility following the initial determination that he was not qualified to be a Social Worker. The alleged retaliatory hostility culminated in a disciplinary hearing and his termination, both on May 24, 2012. (Complaint at ¶ 28)

Brewer appealed the termination to the Office of Administrative Law. On February 13, 2013, an Administrative Law Judge ("ALJ") upheld Brewer's termination, finding that the County had proven by a preponderance of the evidence that Brewer had a problem with chronic and excessive absenteeism and that progressive discipline going back to 2007 did not result in improvement. (Certification of Michael L. Dermondy, Exhibit C, at p. 6)

Brewer filed this Complaint *pro se* on February 7, 2013. The Complaint seeks relief under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), and the New Jersey Conscientious Employee's Protection Act ("CEPA"). Plaintiff also seeks damages for the torts of negligent and intentional infliction of emotional distress and malicious abuse of process. He requests *pro bono* counsel to represent him going forward.

## II. LEGAL STANDARDS

### A. Appointment of *Pro Bono* Counsel

Section 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." District courts have "broad discretion" to decide whether requesting counsel is appropriate, may request counsel at any point in the litigation, and may do so *sua sponte*. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). As an initial matter, the Court must first determine if the party seeking counsel has an underlying case with arguable merit in fact and law. *Id*. at 498-99. Once the claim has passed that threshold, the Court then considers the following list of criteria to assess whether requesting counsel would be appropriate: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations, and (6) whether the case will require testimony from expert witnesses. *Id*. at 499. The list is non-exhaustive, and the Court may consider other facts or factors it determines are important or helpful. *Ibid.*

For the reasons set forth in Part III, Plaintiff does not have an even arguably meritorious case. Moreover, even if he did, the criteria for appointing *pro bono* counsel weigh heavily against him. Plaintiff has demonstrated his ability to present his case by filing a Complaint that articulately lays out his allegations and his demands for relief. The legal issues presented by these facts are not difficult or complex. No factual discovery is necessary, and there is no need for any credibility determinations or experts. Plaintiff requests relief under fee-shifting statutes, and therefore, if his claim were meritorious, he should have been able to procure counsel on a contingency, even if his damages were minimal. His request for *pro bono* counsel is therefore denied.

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See*

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

For the reasons set forth in Part III below, Plaintiff has not met the standard to survive Defendants' motions.

## III. DISCUSSION

### A. Infliction of Emotional Distress and Abuse of Process

The New Jersey Tort Claims Act bars Plaintiff's claims for negligent and intentional infliction of emotional distress and for malicious abuse of process because Plaintiff failed to serve a Notice of Claim. As a prerequisite to suit against a public entity, the Tort Claims Act requires presentation of the claim in accordance with its provisions. N.J.S.A. § 59:8-3. Pursuant to N.J.S.A. § 59:8-8, a complaining party must provide a public entity with notice of a "'claim relating to a cause of action for . . . injury or damage to person or property' against a public entity or public employee." *Velez v. City of Jersey City*, 180 N.J. 284, 293 (2004) (*quoting* N.J.S.A § 59:8-8). "A suit will be dismissed if the claimant did not provide a notice of claim to the entity within ninety days of the 'accrual of a cause of action.'" *Lassoff v. State of New Jersey*, 414 F.Supp.2d 483, 489 (D.N.J. 2006) (*quoting* N.J.S.A § 59:8-8).

Unless otherwise provided for under N.J.S.A. § 59:8-9, a plaintiff who fails to file a Notice of Claim within ninety days of the date of accrual is forever barred from bringing the action. *See Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 626 (D.N.J. 2012). Plaintiff was terminated well over ninety days prior to

the filing of the Complaint. None of the exceptions in N.J.S.A. § 59:8-9 apply. Plaintiff's tort claims are accordingly dismissed.

### B. CEPA

Plaintiff has not stated a claim for a CEPA violation. To state a CEPA claim, a plaintiff must allege: (1) that he or she reasonably believed that his or her employer's conduct was violating a law, rule, or regulation or a clear mandate of public policy concerning the public health or safety; (2) that he or she performed a whistle-blowing activity described in N.J.S.A. § 34:19-3; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 465 (2003). CEPA does not cover purely private grievances. *Maw v. Advanced Clinical Commc'ns, Inc.*, 359 N.J. Super. 420, 432 (App. Div. 2003) ("A salutary limiting principle is that the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee."). Plaintiff's complaints about his job title are purely private and do not implicate harm to the public. His CEPA claim is therefore dismissed.

### C. Section 1983 and NJCRA

Plaintiff has not stated a claim for relief under either 42 U.S.C. § 1983 or NJCRA. Both 42 U.S.C. § 1983 and NJCRA provide an avenue for legal relief against public officials who act under the color of law to violate a plaintiff's rights. *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005); *Rezem Family Associates, LP v. Borough of Millstone*, 423 N.J. Super. 103, 115 (App. Div. 2011). NJCRA was modeled after § 1983, and the elements of claims brought under NJCRA are usually the same as under § 1983. *Rezem Family Associates*, 423 N.J. Super. at 115. *See also Trafton v. City of Woodbury*, 799 F. Supp. 2d 417 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983.").

42 U.S.C. § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." *Elmore v. Cleary*, 399 F.3d at 281 (*quoting Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979)). To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's constitutional or statutory rights, and thereby caused the complained of injury.

Plaintiff alleges workplace retaliation based upon complaints about his title. He articulates no constitutional or statutory guarantee of protection based on his status as one who had a disagreement with his employer about his job title. Without an underlying right to vindicate, Section 1983 and NJCRA are powerless to help Plaintiff.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request for *pro bono* counsel is **DENIED**, and Defendants' motions to dismiss are **GRANTED**. An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 1, 2013**